Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, April 17, 2008 1:12:26 PM

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) ) | |
| TERESA YVONNE WEEKLY ) ) | Case No. 06-1121 |
| Debtor. ) ) | Chapter 13 |
| _____ ) ) | |
| TERESA YVONNE WEEKLY ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Adv. Proc. No. 07-1 |
| BANK ONE WHEELING-STUBENVILLE, ) N.A., ) ) | |
| Defendant. ) _____ ) | |

### MEMORANDUM OPINION

Bank One holds a third priority deed of trust on the on the principal residence of Teresa Yvonne Weekly (the "Debtor" ). The deed of trust "secures" a note with a $25,300 balance. The Debtor seeks to "strip off" this deed of trust on the basis that the value of her principal residence is $38,000, and the first two deeds of trust secure notes having a balance of $41,888. Thus, in the debtor's view, she can treat the $25,300 owed to Bank One as an unsecured debt in her Chapter 13 case. Bank One disagrees with the Debtor's valuation of her property, and asserts that all or a portion of the $25,300 debt is secured by the value of the Debtor's principal residence.

In an effort to avoid the time and expense of trial, the parties submitted a joint stipulation of facts to the court and three competing appraisals. The parties ask that the court consider the submissions in reaching a determination of whether any amount of Bank One's claim is secured by the value of the Debtor's principal residence. Because the court concludes that Bank One's claim is secured by the value of the Debtor's principal residence (at least in part), the court will deny the relief sought in the Debtor's adversary complaint.

## I. BACKGROUND

The Debtor and her non-filing spouse purchased a 6.14 acre tract of land in Tyler County, West Virginia, and permanently placed a double-wide manufactured home on it (the "Property"). The Property is the Debtor's principal residence. The Debtor financed the purchase of the Property with Bank One by borrowing $50,500. On January 12, 1995, Bank One recorded its first deed of trust on the Property.

In the fall of 1995, the Debtor borrowed an additional $13,200 from Bank One. This amount is also secured by the Property under a credit line deed of trust that was recorded on November 25, 1995. Then, in 1997, the Debtor borrowed another $32,538 from Bank One, and the bank recorded its third deed of trust on the Property on July 19, 1997.

The parties stipulated that $33,000 is the outstanding balance on the note secured by the first deed of trust, $8,888 is secured by the second deed of trust, and $25,300 amount owing on the note subject to the third deed of trust.

## II. DISCUSSION

The Debtor asserts that the Property is only worth $38,000, and because the outstanding balance secured by the first and second deeds of trust is $41,888, the note subject to the third deed of trust may be treated as wholly unsecured.

While Congress has prohibited Chapter 13 debtors from "cramming down" the secured portion of a mortgage debt on a debtor's principal residence to the value of the collateral, no similar prohibition exists preventing the "strip off" of liens that are wholly in excess of the value of the collateral. *E.g.*, 11 U.S.C. § 1322(b)(2) (prohibiting the modification of claims "secured" by the debtor's principal residence); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277 (5th Cir. 2000) (holding that § 1322(b)(2) prohibits "cram down," but not "strip off"). In layman's terms, a "cram down" can occur

-2-

when the value of the collateral (for example, $50,000) is less than the outstanding balance on the debt secured by the collateral (for instance, $70,000). In a "cram down" scenario, the debtor can treat $50,000 of the debt as secured, and the remaining $20,000 as an unsecured debt. By comparison, a "strip off" can occur when there is $0 of the collateral's value securing a debt. In the above scenario, if the debtor borrowed an additional $10,000 and granted a second, junior security interest in the collateral, then no money would be available to the second creditor in the event the collateral was liquidated to payoff the first creditor. Under this latter example, the debtor can treat the entire debt owed to the second creditor as unsecured in bankruptcy.

The conclusion that wholly unsecured liens on a debtor's principal residence can be "stripped off" in a Chapter 13 plan – while the unsecured portion of a partially secured claims cannot – is the product of two Bankruptcy Code sections and a decision by the United States Supreme Court. Section 1322(b)(2) of the Bankruptcy Code allows a Chapter 13 debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." In determining whether a creditor is "secured" in property, § 506(a) directs that a creditor only has "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." Any amount in excess of that value is an unsecured claim. *Id.* In *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), the Supreme Court addressed the implications of §§ 1322(b)(2) and 506(a) regarding a first mortgage creditor that was only partially secured by the debtor's principal residence – the "cram down" scenario. The Court determined that the mortgage creditor was still the holder of a "secured claim," as contemplated by § 1322(b)(2), even though a portion of the "secured claim" was not supported by the valuation of the collateral. *Id.* at 328-32.

On the other hand, if no portion of the secured creditor's claim is secured by the value of the collateral then *Nobleman* would not apply because no portion of the debt is "secured" by the value of the collateral. *Nobleman's* "antimodification exception is only triggered where there is sufficient value in the underlying collateral to cover some portion of the creditor's claim." *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 125 (2d Cir. 2001). Indeed, the Court in *Nobleman*, 508 U.S. at 328, stated that the debtor was "correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." This is a clear indication that the Court did not interpret § 1322(b)(2)

–3–

to protect wholly unsecured claims:

> We do not think there is any meaningful sense in which a court could be said to apply § 506(a) if the sole function of the section was simply to adopt the state-law label of the claim as secured. Moreover, if the value of the collateral were irrelevant, then it is hard to see why Justice Thomas would instruct that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." Courts hardly need to perform a valuation of the collateral to adopt the original state-law label of the claim as secured.

*McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 611 (3d Cir. 2000). *See also Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002) (allowing the "strip off" of a wholly unsecured lien based on *Nobleman*); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002) (same); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000) (same) ; 8 *Collier on Bankruptcy* ¶ 1322.06[1][a][I] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2007) (same).

Accordingly, under *Nobleman*, if even one dollar of Bank One's third deed of trust is secured by the value of the collateral, then the Debtor will be unable to "cram down" Bank One's $25,300 claim without Bank One's consent. If no portion of the $25,300 note is secured by the value of the collateral, then the Debtor may "strip off" the lien and treat the entire debt as unsecured.

In addressing the factual dispute between the parties regarding the value of the Property, the court notes that the Debtors borrowed $50,500 to purchase the Property in 1994. In the court's view, it is improbable that the value of the Property would depreciate from the amount borrowed to finance its purchase to $38,000 over a thirteen-year period.

Photos of the Property show that it is located on what appears to be a well maintained State highway and it is surrounded by woodlands. A creek runs by, near, or thorough the Property. The residence is situated on a gently sloping hillside that does not appear to be in a flood plain. The residence itself has three bedrooms, two baths, and appears to be in good condition from the photographs. The residence was purchased in 1994, and, according to Bank One's April 12, 2007 appraisal, the residence has no detrimental site or location conditions. As noted by the Debtor's July 26, 2006 appraisal, however, there is an apparent failure of the Debtor's septic system, the dwelling has a "lower lever of maintenance" and the rear covered deck is of "rough and modest construction." The Debtor's appraiser also notes that

-4-

the Property is rural and about 35 miles from areas of employment and major shopping; however, area "property values have been generally positive for the last few years."

The comparison properties listed by the appraisers differ drastically. All the comparison properties (except one) in the three appraisals are three bedroom, two bath, manufactured homes. The Debtor's comparison properties, which are 15-20 miles away from the Property range from $37,200 to $40,900. Bank One's comparison properties in its April 12, 2007 appraisal, which are 7-13 miles away from the Property range from $65,900 to $77,400. Bank One's comparison properties in its November 14, 2006 appraisal, which are 9-12 miles away from the Property range from $88,500 to $89,000. No comparison property had more than two acres of land; the Debtor's property consists of 6.14 acres.

Bank One's drive-by appraisal dated November 14, 2006, estimates that the Property has a value of $84,500. Bank One's April 12, 2007 appraisal states the value of the Property is $73,000, which includes a $14,000 value attributed to the Property's "site value." The Debtor's July 26, 2006 appraisal states that value of the Property is $38,000. According to the parties' stipulation, after an informal, out-of-court cross-examination of the respective appraisers, the Debtor's appraiser agreed that the value of the Property could be as high as $45,000 and Bank One's appraiser opined that the value could be as low as $65,000.

In reviewing the appraisals and stipulation of the parties, the court rejects the Debtor's appraisal at $38,000. The court reaches this conclusion because: (1) to accept the Debtor's valuation of the Property, the court would essentially have to find that the 1994 purchase price of $50,500 was far in excess of the Property's value, or that the Property depreciated from $50,500 in 1994 to $38,000 in 2006, both of which seem improbable; (2) the Debtor's own appraiser admitted that the value of the property could be as high as $45,000, which is already in excess of the amounts secured by the first and second deeds of trust on the Property; (3) the Property appears to be attractive and in good condition without any visual defects; (4) comparison properties range in value from $36,400 to $89,000, and the value attributed to the Property by the Debtor is at the low end of that range; (5) the Debtor's Property consists of six acres, which, in a rural setting would make it more attractive than any of the other comparison properties, none of which had more than two acres; and (6) while the Debtor's appraiser noted some problem with the Debtor's septic system, neither the extent of that problem nor its impact on the Property's value was

–5–

developed in the record.

Based on the parties stipulation and supporting documents, the court believes that the value of the Property is $65,000. The court believes that the two appraisals by Bank One (for $73,000 and $84,500) are too high because there is no indication that those two appraisals took into consideration how the value of the Property would be affected by the "rough construction" of the Debtor's back deck, problems with the Debtor's septic system, or the limited employment and retail opportunities near the Property. As indicated by the Debtor's appraiser, major employment opportunities and retail merchants are a 35 mile commute. In an out-of-court cross-examination, Bank One's appraiser agreed that the value of the Property could be as low as $65,000. Given the six reasons why the court has rejected the Debtor's valuation of the Property, and the reasons why the court believes that Bank One's submitted appraisals are too high, the court believes that $65,000 is the most accurate estimation of the Property's value.

Consequently, because the value of the Property exceeds the amount of the first and second deed of trust, the Debtor will not be permitted to "strip off" Bank One's third deed of trust.

## III. CONCLUSION

The court will deny the relief sought in the Debtor's adversary complaint. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.